May it please the Court, my name is Rick Pope. I'm here representing the United Transportation Union and Richard Kite. May it please the Court, I'm Mr. Pryor. In this case, we need a clear signal that's pretty simple. You don't extort neutral arbitrators. I'm not talking about... Counsel, let me ask you a practical question about that. Yes, Your Honor. It is certainly disturbing when the company arbitrator tells the neutral, you make decisions like that, you're not going to get much more business from the big railroads. However, what I'm wondering is, suppose he'd been a fellow with a little more control over his his friends among the general counsels for the various railroads. This lady's nuts. We've got clear evidence in a case that there was a previous failure of the alcohol test and she writes an opinion saying it isn't there when it's right in front of her. I don't see why we're using her as a neutral. And he effectively gets her blackballed, but he never said any threatening words to her. He hasn't affected the arbitral process. He's talked to his buddies outside the arbitral process. This goes to the heart of the arbitral process. This is a threat to the judge. Let me move my hypothetical another step. Yes, Your Honor. Suppose that it never gets that far because the lady's trying to start an arbitration business for herself of being a paid neutral, good money and being a paid neutral. And she looks at the people in front of her and she If I rule against the big railroads, it's not going to be good for business. So nobody says anything to anyone, no threats or anyone. But she responds to the obvious need to get repeat business by shading her decisions. In that hypothetical, there's no threat, no direct threat to the system of justice. It's just an inherent defect in the arbitration process. That's correct. And bad enough with that inherent defect without adding to it by directly threatening the arbitrator. Correct, Your Honor. In this case, we've got the kind of threat, direct threat to a neutral arbitrator that makes your hair stand on end. That you feel in the pit of your stomach and that causes her to resign and change her career. Mr. Pope, we've got a question. I appreciate the histronics, but we've got a legal issue here. I'd really like to focus on it. Which are you appealing? The Zimmerman draft order or the Peterson award? We are seeking review. Thinking review? Seeking review. Oh, seeking review. Yes. Of the Zimmerman dismissal, which, as alleged, worked in conjunction with the draft order to prevent implementation of that draft order. Okay. Let me just, if you don't, work with me, okay? Yes. You have, and I join my colleagues in my view of what the company representative said. It's reprehensible. We have to do this as a matter of law. You have Zimmerman, the neutral arbitrator. There's a statement made in the public, openly. There's a draft document. It says it's a draft document. It's not signed by either other party. It's out there. Nothing else happened except she recuses herself. Is it your position that this unsigned document that is referred to in its own terms as a draft is a reviewable order? I think it can be. I think that we focused on the dismissal and the dismissal as easier to fit within the normal case law that we see, but I think it could be. Okay. When you say the dismissal, you're talking about her dismissal without prejudice, right? That followed her recusal. Correct. Okay. When you went to the next step, when Mr. Peterson got involved and the union and the railroad representative signed an award, what was the status at that point of the prior dismissal without prejudice? It had been replaced by that new award. Okay. So I admit that this is a strange law, and the way it's applied is perhaps even stranger, but that's Congress's problem, not ours. We have to deal with what we've got. I am troubled by how we get to any sort of relief that you're looking for, because if you take it out of this context, put it in a regular courtroom situation, you have a judge that recuses him or herself and dismisses for whatever reason and dismisses a claim without prejudice. Then another judge comes in and issues an order. You're asking us, and again, I know it's not directly analysis, but you're asking us to say that the dismissal without prejudice is the appealable document. I don't understand how we do that. Help me. Yeah, I would like to answer that, Your Honor, because I just have an answer. And the answer is there's a long history of case law that says when there's extrinsic fraud in an arbitration proceeding under this statute, that's reviewable. Okay. Now, just stop right here. Extrinsic law says that's common law fraud, right? It has to qualify for common law fraud. Or corruption. Or corruption. Okay. Tell me what the corruption is here in this sentence. This man made this statement. Extortion of the arbitration. And what did he pay? What did she get? He paid nothing. He made a threat. Okay. And can you show on anything in the record why she did the recusal? I can assume it, but... We draw every inference in favor of the petition, and it happened right after the threat was made. She quit the panel, and she quit her career as an arbitrator. Now, this is a motion to dismiss, isn't it? Yes. What's the... Not what your proof is, but what's the allegation in your motion? That she recused herself because of this threat. Okay. And when you got to the district court, what did you... What was your motion there? Again, you had the Peterson Award at that point, which had been signed by the UTU representative and the business. Yes. What was the status of that document at that time? Did you ask the court to ignore that? No. We asked for a review of that as the fruit of the previous dismissal that was caused by extortion. It was a do-over. And, Your Honor, I would like... Counsel, there's something that bothers me when we get past the inappropriateness of the remarks that the company arbitrator made. Let me tell you what it is. First of all, as I understand it, the plain and true fact was that this fellow, Kite, had had a previous alcohol violation within, I think, it's 10 years, which makes him fireable. And second, if the arbitrator not only quit the panel, but also quit her career as an arbitrator, then the threat that you're not going to have much of a career as an arbitrator is an empty threat. So I'm wondering just what it is we're doing here except telling people how to keep their mouths shut when they say something that's going to be harmful to a case as opposed to trying to right wrongs. I wouldn't call it an empty threat. I'd call it a threat that we're... An empty threat to me would be, you know, if you make this decision, we're going to have you removed as a judge. Well, empty threat. Good luck with that. Well, she didn't make her decision, Your Honor. She was all set to. And I am going to be writing a letter to the court with a new case, with a case I discovered yesterday. It's not a new case, and I've informed Mr. Pryor about it, so he'll have a chance to respond. But it's from the Seventh Circuit called Delaware-Hudson Corporation v. Williams, 129 F. 2nd. 11, 1942. And they go into quite an analysis of the do-over situation and how improper that is. You have a case, incidentally, that says that the kind of threat that the company arbitrator made is corruption under the law. I couldn't find anything except some scattered district court references. I couldn't find a circuit court. You have everything I have, Your Honor. So you're saying that we have to determine whether that is corruption since it has not yet been determined either way? Well, I think when somebody says... No, no. You're not telling me... I didn't ask you to explain why it's corruption. I said the posture of the law as you see it is that that issue has not yet been determined, and it is up to us to say, does this fall within the definition of corruption? Yes, but I think the standard statutes that define extortion clearly encompass this kind of a threat of economic retaliation. How do you deal with Pacific and Arctic Railway Navigation Company v. UTU? I think that's a good example of both sides are capable of abusing the arbitral process. And under that case, which set forth the common law definition of fraud, does this situation, can you make out a case of fraud under that case? Well, that case... There are four elements as I see it. Do you meet each of those elements? I'd have to go back and review each of the elements, Your Honor, but that case says neither the law nor sound principles of labor arbitration require that fraud be insulated from judicial review, and they do use fraud in the broad sense to encompass corruption. Forgive me, Mr. Pope. I understand why you're angry about this. I share your reprobation of what this man did. But we're a court of law, and if you're going to prove a case, you've got to meet the elements. And what I'm looking for is, aside from the histronics, where's the proof under the law, by clear and convincing evidence according to the same case, that extortion occurred here? That's a criminal offense. Did you, by the way, file a police report? No. Did you report this man to the National Labor... I forget what the technical term is. Anyway, the head organization, did you report him? I did not, no. Why not? This is an extortion. We brought a case to review this proceeding. That's what we did. I understand, but that's why I'm saying what I'm struggling with. Not the fact that what he did was reprehensible, but whether he committed a crime. And fraud and corruption are crimes. Well, we're not... What I'm asking you is, where is the evidence in the record that one of these crimes was committed? We'll find a way to get there, but I don't see it, unless I'm missing something. May I explain? Please. The evidence we put in is the... No, wait. How much evidence do you put in at a motion to dismiss? Well, the allegations that we made and responding to... The allegations, but there's no evidence at this stage of the proceedings, is there? Correct. We don't have to prove anything. We've made allegations. But I did put in the record that particularly the Washington statute says... Show us the factual allegation. The factual allegation is in our petition, Your Honor. Yeah. Just show us the words that we should use. I think it's paragraph 15, isn't it? Paragraph 15. Where is that in the record? ER 34. In the course of the meeting, Boldra, that's the railroad partisan arbitrator, stated that he opposed the decision and wanted Neutral Zimmerman to reverse her vote for reinstatement and reissue the award as sustaining the dismissal. When Zimmerman refused, saying that her notes from the hearing clearly mandated the decision she had authored, Boldra then told her that, quote, if you are going to issue these kinds of opinions, you will never work for a Class 1 railroad again, unquote. In response, Zimmerman responded that all she could do at that point was recuse herself. If BNSF carried out its threat to blacklist Zimmerman with all Class 1 railroads in the United States, such conduct would likely have had a devastating effect upon Zimmerman's earnings as a referee. Now, that last sentence is falsified by another allegation that you made, that she quit her career as a referee. Can't very well have a devastating effect on her earnings if she's not in that business anymore. At the time, the threat is gauged by the circumstances at the time, not how she later acts after the threat is made. So I think the fear is there. We don't know, we don't. Is there any allegation that she was going to continue her career as a referee but for the threat? No. And there's no allegation that she quit her career. There's just evidence in the record that she left her career as an arbitrator. She did quit that panel. And if I may answer one of Judge Kleinfeld's other points, if the threat had been made, change your decision or you'll never work again in this field, and she changed her decision and issued a final decision that everybody signed off on, I don't think there'd be a big debate over what's going on here. The question is, they cannot do indirectly what they can't do directly. And if they can do this, they've got a blueprint, anybody, either side, either side in the Railway Labor Act, not just railroad, not just labor, has a blueprint for how they can accomplish this kind of interference with the arbitral process. Let me just be sure I understand, taking lead off of my colleague, Judge Reinfeld's comment. The allegations that you just referred to is your best case for making out extortion. Is that correct? That's correct. So if there's no extortion there under the law, you lose. Is that correct? Yes. Okay. So, in any event, and how, whatever the... I think you should wind it up, we're over time. Okay, yes, Your Honor. What we, what my argument is, when the corruption occurs indirectly rather than directly, we need to not dance on the jurisdictional head of a pin to see if it can be reviewed. We need to review it. That's the guts of our argument, Your Honor. Thank you, Ken. Good morning. May it please the Court. My name is David Pryor. I'm here on behalf of The Court has already recognized early on that it's been a source of confusion about what order, in fact, is being appealed. The appellate briefing, I think, makes clear that the recusal order is the order that the union intends to rely upon as the basis for review. And the recusal order argument was unfairly placed before the district court. I'm not sure of that. It's not as clear as it might be. It comes as a bit of a ball of strings all rolled up together. But it looked to me like what the union was appealing here, or the union side and kite, was the woman recuses herself, the first panel decision never becomes a decision, and the second panel decision is tainted by the first because of the recusal, without which there never would have been a second decision. I don't really see the strength of your waiver argument. Well, it depends on whether or not the, at least, turns at least in part on whether or not the Court believes that two signatures are required. Because in the appellate... Well, the first decision is obviously not a decision. It's not signed. Not signed. And it appears to have been created just to show whoever approves the pay slips that the work had been done. But the recusal order is signed, and I think the statute says decision or order. It does, but the statute and the case law require two signatures, and the way the union gets there... Well, you were talking about waiver, you said. Is that the end of your waiver argument? No, Your Honor. What is your waiver argument? Waived below the assertion made here that the recusal order is properly signed by two parties under the Railway Labor Act. Well, that's a different... Can we treat... Put the waiver aside. Let's just treat it as a matter of law. Okay. Would you discuss whether the recusal letter is reviewable under Section 153, First Q? Yes. Why is that reviewable, if it's reviewable? I don't believe it is reviewable. And why is that? I believe it is not an award. It does not... Is it an order? It is not an order reviewable under Q. All right, but it's an order. It is an order. I think it is an order. But it is not signed by a majority, even under the ratification theory, which I don't believe exists in the law, nor is it a final award in that it resolves the issues that the parties put before the arbitrator. But Q says that an agreed party can file a petition for review of the division's order. That's right. Not just an award. So is this an order? Her recusal order? I don't believe this is an order. Why wouldn't it be? Some orders require two signatures, but recusals are always, or almost always, just signed by the person recusing him or herself. That's right. And this would be further evidence that this is not an award. No, but it's an order. It's an order. And it's an order signed by all the signatures that are necessary. Well, I think the question becomes whether or not this court... I mean, with judges, we recuse ourselves from time to time. We discover we own shares of stock in some company that we didn't even know about when a case got assigned. That's right. And we recuse ourselves, and other judges don't recuse us. We recuse ourselves, and it's one judge. That's right. Even though three judge panels make decisions by at least two. I think what I'm perhaps not getting across is, I mean, the railroad labor act isn't an unusual animal. It's a very insular animal. It's an animal that strongly militates towards everything being done in the RLA process. And so the statute itself and the case law that's interpreted in the statute says, look, we don't even want to hear about any fraud or corruption or outside the act or abuse of discretion unless we have a final document that everybody agrees is the document. The railway labor act, for example, allows for... No, I don't read that sentence as saying that at all. Well, I don't... Where do you get... Do you have a case that says that you can't challenge your recusal order? No, I don't have a case, but I do have a case that says that a final order under the railway labor act is one that resolves the merits of the party's dispute. That's the Anderson v. Fort West case. Why couldn't... Why do we even need any of this? I mean, it seems to me that Kite and the union could just appeal the final second order of the new panel. I think the fellow's name was Peterson on it. Peterson. A guy that was okay with everyone, and say that order was tainted by corruption because the only way it came about was that the first panel was broken up by extortionate economic pressure. That's basically what they're saying anyway. It is. We could just treat it as an appeal of that second arbitration, and we don't have to reach any of these interesting but complicated questions of waiver and finality and all that. But they didn't appeal the Peterson order, did they? They didn't. They didn't appeal the Peterson order, number one. But number two, this is wrapped together with the idea that they never raised in front of Peterson. This is intrinsic versus extrinsic. Well, now, wait a minute. Why do you say they didn't appeal the order? The relief they seek is that the award, the April 20th award and the April 10th award, be vacated. It's having been procured and tainted by fraud. Which award is the April 29th award and the April 10th award? What awards are they? Well, the April 2010 award is the award of Mr. Peterson. Okay, so they did ask that it be vacated, right? The refusal award is the April 2009 award. All right. They did ask that the Peterson award be vacated, right? They did ask for it to be vacated. So why did you tell Judge Smith? I was going to say that's what I was asking you about is whether they appealed that. You told Judge Smith it hadn't been appealed. When they attached, and perhaps I'm reading their complaint differently than the court does, they attached as an exhibit to the complaint the draft award. So what? That is the award they sought to appeal, my fair reading of the complaint. You mean if they say we appeal A and they attach a copy of B, it means they're not appealing A, they're only appealing B. That's your theory. Well, even below, Judge, they never argued they were appealing the Peterson award. I mean, in front of the court, and you can go back and look at their response to our motion to dismiss, we say, look, the Zimmerman award is not signed. They say, well. Let's say they did. Let's say they did appeal the Peterson award as being tainted by corruption because of extortionate economic pressure put on the neutral arbitrator in the first panel. Let's just say that. Okay. What do you have to show that under the law the remark alleged does not constitute corruption? Okay. I couldn't find a circuit court decision in your sites, just scattered district court stuff that wasn't really that authoritative. Well, there's the Gateway case, the Gateway Western case in the Seventh Circuit, but that was a situation where the arbitrator was a convicted felon and the parties didn't know about it and they said that wasn't enough. With respect to a comment itself. There's nothing like this case. I don't think we have one. However, I don't think it meets the standard under the Ninth Circuit, as was suggested earlier, because under the Ninth Circuit. Which case? Pacific and Arctic Railway. Because one of the standards for review is that for it to be fraud, it has to not be discoverable by due diligence before or during the hearing. This was clearly not. Was Haidt going to find out that in the executive session on the phone, the company lawyer threatened the neutral's livelihood? Jay Shulmire was present. General Chairman Shulmire was present at the alleged statement. And that's, in fact, how the union supposedly. Union's arbitrator? Yes, that's the union's part of it. He was present. What is the problem? What didn't they do? They didn't raise the issue. So you're back to waiver. Well, yes, but I think Pacific and the question. They said they did in their complaint. And the district judge said the reason there's no waiver is we can, at this stage of the proceedings, what he said is that we've determined that they did raise it. Well, Your Honor, I think there are two points there. One is whether they raised it in writing to Peterson, and the full submission to arbitrator Peterson. Well, I don't know that they have to raise it in writing to Peterson. Why in writing? Well, I don't know whether they do or they don't. But if the executive session is enough, if anyone's asking for a do-over, it's the union. I mean, if the judge says something, if I'm a lawyer in practice and the judge says something crazy to me and I say, Your Honor, I request that you recuse yourself, it doesn't have to be in writing to set up a predicate for an appeal. Well, Your Honor, let me make at least two points. One point is that what Mr. Shulmire says he told Peterson in the executive session was that a threat was made and that it was improper, and that's within his declaration. There's no mention of it within the complaint itself. So if we're going for that as the threat that would somehow tank the Peterson award, it's that a threat was made and that it was improper. There's no detail or bones on it at all. You know, you can make a motion for summary judgment, and then both sides will have an opportunity to submit affidavits that set forth all the relevant material. This is a motion to dismiss. It is, Your Honor. So why do we have to say that, look, they don't have all the facts that they would put later in a motion for summary judgment? If you're asking that, why are we talking about all these things in a motion to dismiss? They made a proper pleading. Well, actually, I don't think they made a proper pleading, Your Honor, because under Pacific and Arctic Railway, again, for it to be fraud under the Railway Labor Act, it has to be ---- Fraud in the first place. This is corruption. Fraud or corruption. It has to be discovered by due diligence. You have to give the parties a chance to cure it. It has to be secret bias, and this was not secret bias. You mean if it's open bias, it's okay? Yes. If it is partisan, if it is a partisan saying, Judge, this is crazy, I just don't ---- So if the neutral said right out loud during the proceeding with all five of them, I am concerned about making a lot of money before I retire, so all my rulings are going to be in favor of the company because they pay better. That would be okay. I think it would be okay because what the union would do then is go back to Roland Watkins or to go to, you know, they would say, look, I've got the arbitrator saying on the record that she's biased. Mr. Watkins, please give me another arbitrator. She'd go to the National Mediation Board and she'd ask for another arbitrator, and that's how she would cure that fraud, that intrinsic fraud. Yes, I think that's exactly right, Your Honor. Thank you. Thank you, counsel. You really have no time. You feel it's just ---- I have no time unless Your Honor has questions. Thank you. No questions. Case just argued will be submitted. I apologize for getting excited. It's all right. I have no problem with that. I just ---- it doesn't ---- it takes away our time to get the questions answered. I don't fault your enthusiasm. For odd ducks like us, this sort of thing is very exciting. I like the Arlington. My colleague speaks for himself in terms of the ducks. Okay.
judges: Reinhardt, Kleinfeld, Smith